IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

DAVID ABRAM ANAYA,                    §
                                      §
        Petitioner,                   §
                                      §
v.                                    §          2:15-CV-234-D
                                      §
LORIE DAVIS, Director,                §
Texas Department of Criminal Justice, §
Correctional Institutions Division,   §
                                      §
        Respondent.                   §

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## TO DENY PETITION FOR A WRIT OF HABEAS CORPUS

Before the Court is the Petition for a Writ of Habeas Corpus by a Person in State Custody filed by petitioner DAVID ABRAM ANAYA.  For the following reasons, petitioner's habeas application should be DENIED.

I.
PROCEDURAL HISTORY

On August 13, 2009, petitioner was charged by grand jury Indictment in Potter County, Texas, with the first-degree felony offense of murder in violation of Texas Penal Code § 19.02. *State v. Anaya*, No. 59,854-A [ECF 14-16 at 9].  The Indictment alleged petitioner, on or about May 31, 2009:

> [D]id then and there intentionally or knowingly cause the death of an individual, namely Eric Mireles, by shooting him with a firearm.

That same date, the grand jury, by separate Indictment, charged petitioner with the second-degree felony offense of aggravated assault with a deadly weapon in violation of Texas Penal Code § 22.02.  *State v. Anaya*, No. 59,877-A [ECF 15-5 at 8].  The Indictment alleged petitioner, on or

about May 31, 2009:

> [D]id then and there intentionally or knowingly threaten Steven Sifuentez with imminent bodily injury, and did then and there use or exhibit a deadly weapon, to-wit: a firearm, during the commission of the assault.

Petitioner was tried in a joint trial before a jury for the indicted offenses in the 47th Judicial District Court of Potter County; on October 6, 2010, the jury found petitioner guilty of both the murder offense and the aggravated assault with a deadly weapon offense as alleged in the Indictments. On October 7, 2010, the jury assessed petitioner's punishment at 99 years and 40 years confinement, respectively, in the Texas Department of Criminal Justice, Correctional Institutions Division.

Petitioner filed a direct appeal of his convictions and sentences to the Court of Appeals for the Seventh District of Texas. On August 15, 2012, the state intermediate appellate court affirmed petitioner's convictions. *Anaya v. State*, Nos. 07-10-00462-CR, 07-10-00463-CR. [ECF 15-9 at 66]. On October 30, 2013, the Texas Court of Criminal Appeals (TCCA) granted petitioner leave to file an out-of-time petition for discretionary review [PDR] in each case. *In re Anaya*, Nos. 80,336-01, 80,336-02 [ECF 15-10]. On March 12, 2014, the TCCA refused both of petitioner's petitions. *Anaya v. State*, PD-1568-13, PD-1569-13 [ECF 14-8].[1] Petitioner did not seek certiorari review by filing petitions with the United States Supreme Court.

Petitioner sought collateral review of his Potter County convictions by filing state habeas corpus petitions. On April 8, 2015, the TCCA denied petitioner's state habeas applications on the merits without written order. *In re Anaya*, Nos. 80,336-03, 80,336-04 [ECF 15-14; 15-18]. On October 5, 2015, the United States Supreme Court denied certiorari review of both of petitioner's state habeas cases. *Anaya v. Texas,* 136 S.Ct. 195 (2015). Petitioner attempted to again

---

[1]The record submitted by respondent appears to only include the PDR refusal as to petitioner's murder conviction; however, review of the TCCA website reflects that court refused PDRs in both cases on March 12, 2014.

challenge his convictions by filing subsequent state habeas applications.  On July 1, 2015, the

TCCA dismissed both writ applications as successive.  *In re Anaya*, Nos. 80,336-05, 80,336-06

[ECF 15-23; 15-25].

On July 17, 2015, petitioner purportedly placed the instant federal application for habeas

corpus in the prison mailing system.  Petitioner's application was received by this Court and file-

stamped on July 23, 2015.  [ECF 3].  On October 27, 2015, respondent filed an answer to

petitioner's habeas application opposing relief.  [ECF 13].  On November 9, 2015, petitioner

filed a reply to respondent's answer.  [ECF 16].

## II.
## FACTUAL HISTORY

The state intermediate appellate court summarized the evidence in petitioner's case as

follows:

> In the early morning hours of May 31, 2009, Angelica Alvarez drove her younger
> brother Eloy, her boyfriend Markous Sifuentez, his younger brother Steven
> Sifuentez and the victim in this case, Eric Mireles, to an after-hours club. [2]
> According to Angelica, upon entering the club they encountered [petitioner], whom
> she did not know, and he warned them not to cause trouble.  She testified that he
> name-dropped gang affiliation and asserted the club was his.  Leaving her brother,
> she and her passengers left the club to visit a friend's house.  At approximately
> 3:30 a.m., they returned to pick up Eloy.
>
> According to the evidence, [petitioner's] half-brother, Anthony Escoto, who had
> been involved in a fight earlier, fired a gun in the club parking lot and was jumped
> and severely beaten by a group of club patrons.  Eloy testified that gunshots caused
> the patrons to head to their respective cars and scurry from the parking lot before
> police arrived.  Eloy, Angelica and Markous ran to Angelica's car to leave. [3]
>
> As they attempted to leave, Anthony was leaning against Angelica's car, bleeding
> from wounds he sustained in the melee.  Markous threw him off so they could
> leave.  Angelica was in the driver's seat, Markous was in the front seat, Steven was

---

[2]Angelica had graduated from high school the day before and was out celebrating.

[3]Steven and Eric had remained in the car when they returned to the club to pick up Eloy.

seated behind Angelica, Eric was sitting in the middle of the back seat and Eloy was seated behind Markous.   After leaving the parking lot they were driving along Amarillo Boulevard.   Angelica and several of the occupants of her car testified similarly that [petitioner's] car pulled up beside her car and one of its occupants shouted at them about "jumping" his brother.   They then heard gunshots which resulted in Eric being shot and killed.

[Petitioner] testified during the guilt/innocence phase.   According to his version of the events, while he was inside the club, he heard that Anthony was outside fighting and went to intervene.   After that initial fight, [petitioner] went back inside the club until closing time.[4]   After the club closed, [petitioner], his girlfriend and a friend of hers got in his car to leave.   He noticed a crowd gather in the parking lot and saw "flashes of a gun in the air."   He observed a group "pounding on somebody with their feet" and exited his car to see if Anthony was involved.   He found Anthony badly beaten and carried him to his car and placed him in the front seat. He took Anthony's gun and placed it on the console between the seats.   Because he was on parole he wanted to leave before police arrived.   He further testified that when he pulled up alongside Angelica's car,[5] the front passenger was making aggressive gestures and someone in the back seat pointed a gun at him through the rear passenger window.   According to his testimony, he then shot at Angelica's car to defend himself.   During the investigation, a black toy gun was found under the seat of Angelica's car.   Eloy testified the gun was his but claimed he was unaware it was in the car at the time of the shooting.   A Special Crimes Unit investigator testified that prints were not recoverable from the toy gun.   He also testified it resembled a semi-automatic and that the blue and orange coloring indicating it was a toy had been scratched or sanded off to make it look more like a real weapon.

Markous testified that after they left the club they drove along Amarillo Boulevard. At one point he noticed car lights approaching and observed a red Camaro driven by [petitioner] pull up beside Angelica's car.   Both cars had the windows rolled down.   [Petitioner] accused the occupants of Angelica's car of being the persons who had "jumped" Anthony and threatened that if they jumped his brother, they jump him.   He then pointed a gun out the driver's side window and fired at Angelica's car.   Eloy testified that [petitioner] had his left hand on the steering wheel and fired out the driver's window with his right hand.   After shots were fired, Eloy realized that Eric had sustained a gunshot wound to his right temple and had fallen onto his lap.   Markous instructed Angelica to take off and they drove to a residence belonging to Eric's cousin, where Eric had been living.

They took Eric's body out of the car and placed it on the driveway.   They then hid Angelica's car behind the residence to avoid detection in case [petitioner] had followed them.   Markous banged on the front door of the residence until Eric's

---

[4]Anthony had been banned from the club and remained outside.

[5]The female passenger in [petitioner's] car testified that [petitioner] wanted to know who attacked his brother and passed several cars after leaving the club to reach Angelica's car which was easily identifiable because it had "Class of '09" painted on the rear window.

cousin answered. She observed the body on her driveway and called 911. Officers were dispatched to the residence to investigate at approximately 4:10 a.m.

After the shooting, [petitioner], at Anthony's direction, drove around looking for Anthony's girlfriend. When they found her, Anthony got into her car and left with her. [Petitioner] then drove with his girlfriend to a park where they remained until later that morning. After he drove his girlfriend home, he went home to rest. An investigation of the shooting led a member of the Special Crimes Unit to [petitioner's] home. After being questioned about the incident at the club, [petitioner] denied being there; however, he voluntarily went to the police department to answer questions and he consented to a search of his car. He was cooperative until he was informed someone had been shot following the incident at the club. He then terminated the interview and requested counsel. The investigator testified there was not enough information to hold [petitioner] at that time and he was released. Following a positive identification by witnesses, an arrest warrant for [petitioner] was issued later that afternoon.

[Petitioner] testified he went to his sister's home after leaving the police department and later had her drop him off at a park so he could think. He had a duffle bag packed, which included the gun used in the shooting. He walked to a nearby gas station and asked someone with New Mexico license plates for a ride. He was given a ride to Albuquerque where he exchanged the gun for lodging. He remained there until his arrest on August 4, 2009.

Numerous law enforcement officers testified about the investigation. Special Crimes Unit investigators determined that Angelica's car had two bullet holes in the rear passenger door and the medical examiner testified that Eric died from a gunshot wound to the head from an undetermined range.

[ECF 14-12 at 2-5].

III.
## PETITIONER'S ALLEGATIONS

Petitioner contends his confinement is in violation of the Constitution and laws of the

United States because he was denied his right to effective assistance of counsel at trial.

Specifically, petitioner alleges trial counsel was ineffective because of his failure to:

1.    object to the wording of the retreat provision in the trial court's instruction on self-defense in the jury charge;

2.    accurately advise petitioner on the applicable law concerning deadly force in defense of person to enable petitioner to adequately evaluate the State's plea offers;

3.    request the trial court include an instruction on the justification of "necessity" in the jury charge; and

4.    request the trial court instruct, in the jury charge, that reasonable doubt as to whether petitioner acted in self-defense required petitioner be acquitted.

IV.
STANDARD OF REVIEW

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody under a state court judgment shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows the prior adjudication:

1.    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

2.    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). A state court decision will be an unreasonable application of clearly established precedent if it correctly identifies the applicable rule but applies it objectively unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08; *see also Neal v. Puckett*, 286 F.3d 230, 236, 244-46 (5th Cir. 2002) (en banc per curiam), *cert. denied*, 537 U.S. 1104 (2003). A determination of a factual issue made by a state court shall be presumed to be correct. 28 U.S.C. § 2254(e)(1). The applicant has the burden of rebutting this presumption of correctness by clear and convincing evidence. *Hill*, 210 F.3d at 485. When the Texas Court of Criminal Appeals denies relief on a state habeas corpus

application without written order, such ruling is an adjudication on the merits that is entitled to this presumption.   *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex.Crim.App. 1997).

Whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning. *Harrington v. Richter*, 562 U.S. 86, 98 (2011).   Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.   *Id.*   This is so whether or not the state court decision reveals which of the elements, in a multi-part claim, it found insufficient.   Section 2254(d) applies when a "claim," not a component of one, has been adjudicated.   *Id.*

Here, petitioner filed state habeas applications challenging the constitutionality of his murder and aggravated assault convictions and sentences alleging the same grounds alleged in the instant federal habeas petition.   On April 8, 2015, the TCCA denied petitioner's state habeas applications without written order.   *Ex parte Anaya*, WR 80,336-03, WR 80,336-04.   The rulings of the TCCA constitute adjudications of petitioner's claims on the merits.   *See Bledsue v. Johnson,* 188 F.3d 250, 257 (5th Cir. 1999).   Consequently, this Court's review is limited to a determination of whether petitioner has shown the state court's decisions that petitioner was not denied effective assistance of trial counsel was based on an unreasonable determination of the facts in light of the evidence before the state court, or was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.

V.
MERITS

EFFECTIVENESS OF COUNSEL

In her October 27, 2015 Answer, respondent thoroughly and accurately briefed statutory and case law regarding the applicable standards of review for claims of ineffective assistance of

counsel.  [ECF 13 at 11-12].  The Court will not repeat respondent's recitations regarding these well-accepted standards of review, except to again note an ineffective assistance of counsel claim requires petitioner show defense counsel's performance was both deficient <u>and</u> prejudicial under the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668, 689 (1984).  If a petitioner fails to show either the deficiency or prejudice prong of the *Strickland* test, then this Court need not consider the other prong.  *Id.* at 697.  Moreover, when a state prisoner asks a federal court to set aside a conviction or sentence due to ineffective assistance of counsel, the federal court is required to use the "doubly deferential" standard of review that credits any reasonable state court finding of fact or conclusion of law and presumes defense counsel's performance fell within the bounds of reasonableness.  *Burt v. Titlow*, 571 U.S. 12, 15 (2013).

As petitioner's ineffective assistance of counsel claims were adjudicated on the merits in his state habeas proceedings, the denials of relief are considered to have been based on factual determinations.  Consequently, these state court adjudications will not be overturned unless they are objectively unreasonable in light of the evidence presented in the state court proceedings. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003).  A state-court factual determination is not unreasonable merely because the federal court would have reached a different conclusion in the first instance.  *Burt*, 134 S. Ct. at 15.  Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct.  The petitioner has the burden of rebutting this presumption of correctness by clear and convincing evidence.  *Canales v. Stephens*, 765 F.3d 551, 563 (5th Cir. 2014).  When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits and is entitled to this presumption.  *Ex parte Torres*, 943 S.W.2d 469,

472 (Tex. Crim. App. 1997); *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999) (recognizing this Texas state writ jurisprudence).

1.   Failure to Object to Retreat Provisions in Jury Charge Instructions on Self-Defense[6]

In the charge to the jury at the close of the guilt-innocence phase of petitioner's trial, the trial court instructed the jury on self-defense and the use of deadly force in defense of person as follows:

> Our law provides that it is a defense to the offense of Murder if the defendant reasonably acted in self-defense.   The State is not required to negate the existence of a defense.[7]

> \* \* \*

> A person is justified in using deadly force against another if the defendant reasonably believes the force is immediately necessary to protect the defendant against the other's use or attempted use of unlawful deadly force.

> *A person is under a duty to retreat to avoid the necessity of defending himself with deadly force unless there is evidence before you that the person using deadly force:*

> (1)   *had a right to be present at the location where the force was used,*
> (2)   *did not provoke the person against whom the force was used, and*
> (3)   *was not engaged in criminal activity at the time the force was used.*

[ECF 14-16 at 109-10] (emphasis added).   At the time of the incident in question, the Texas Penal Code provided a person was justified in using deadly force against another only under certain limited circumstances, and that:

> (c)   A person who has a right to be present at the location where the deadly force is used, who has not provoked the person against whom the deadly force is used, and who is not engaged in criminal activity at the time the deadly force is used is

---

[6]The portions of the jury charge here in issue, in both petitioner's aggravated assault and murder cases, used nearly-identical language except for substituting the elements of the aggravated assault offense in place of the elements of the murder offense where applicable.   [ECF 15-5 at 95-98].   Therefore, in addressing each of petitioner's grounds, the undersigned will only reference and/or quote the jury charge in petitioner's murder case, noting any other differences in the charges' language by footnote.

[7]The jury charge in the aggravated assault case included the language, "however, the State must prove each and every element of the offense beyond a reasonable doubt."   [ECF 15-5 at 96].

not required to retreat before using deadly force as described by this section.

Tex. Penal Code Ann. § 9.32(c) (2009).  The statute further provided that if a person was not required to retreat because he met the conditions under subsection (c), then a jury could not consider that person's failure to retreat in determining whether that person reasonably believed the use of deadly force was immediately necessary to protect that person against the other's use or attempted use of unlawful deadly force.  Tex. Penal Code Ann. § 9.32(d) (2009).

During the charge conference, counsel in both of petitioner's cases argued that although the retreat provision in the jury charge "track[ed] the law" or "track[ed] the statute" of the Texas Penal Code, such law was unconstitutionally vague because of the language "who is not engaged in criminal activity at the time the deadly force is used."   [ECF 15-17 at 28-30].   The trial court overruled counsels' objections.

By his first ground, petitioner argues counsel was deficient for failing to object to the wording of the retreat provision used by the trial court in its instruction as to when deadly force may be used in defense of person.  Specifically, petitioner argues counsel should have asserted the objection that the retreat provision set forth above "did not track the statutory definition." Petitioner contends he was prejudiced by counsel's failure to assert the "statutory tracking" objection because the trial court would have sustained counsel's objection and redrafted the provision to precisely mirror the statute.  Petitioner concludes not only that counsel's failure to make such an objection allowed the improperly-worded retreat provision with regard to the use of deadly force to be presented to the jury, but also that the inclusion of such a non-statutory provision constituted "an improper comment on the weight of the evidence [by the trial court] that embraced that under all circumstances petitioner had a duty to retreat."[8]

---

[8]It is unclear if petitioner is also contending that the trial court should not have provided any instruction whatsoever on retreat, regardless of how it was worded.

Petitioner raised this ground in his applications for state habeas relief. During the state habeas proceedings, counsel filed an affidavit stating, "Defense counsel did object to the inclusion of duty to retreat language in the self-defense instruction" and attached the portions of the transcript wherein both counsel made the unconstitutionally vague objection to the one sentence of the retreat provision. [ECF 15-17 at 26-30]. The state habeas trial court did not enter findings of fact or conclusions of law on petitioner's state habeas applications. The TCCA denied petitioner's habeas applications without written orders, determinations on the merits of petitioner's claim.

While the retreat provision in the trial court's jury charge on the use of deadly force, for the most part, tracked the language of the statute verbatim, it did not *precisely* conform to the language of the statute. Instead, the charge provision indicated a duty to retreat before using deadly force exists <u>unless</u> certain circumstances are met while the statute indicates no duty to retreat exists <u>if</u> these same certain circumstances are met. The undersigned finds this slight variance in the court's charge was a distinction without a difference. However, if counsel had asserted a "statutory tracking" objection to the language of the provision, there is a reasonable probability the trial court would have sustained the objection and modified the instruction to *precisely* match the statutory language. Therefore, for purposes of this ground, the undersigned will presume, without specifically finding, petitioner has shown counsel was deficient for failing to assert a "statutory tracking" objection to the wording of the retreat provision in the use of deadly force in defense of person portion of the jury charge.

Petitioner has not, however, shown he was prejudiced by any deficiency on the part of either counsel in failing to make a "statutory tracking" objection. The slight variation in the trial court's charge did not improperly impose a "general duty to retreat" as provided under the pre-

2007 version of the statute.[9]  *Cf. Morales v. State*, 357 S.W.3d 1 (Tex.Crim.App. 2011).  Nor was the wording of the charge so non-conforming with the statute that it constituted a comment on the weight of the evidence by the trial court.  *Cf. id.*  Under either the charge's language or the language of the statute, petitioner did not have a duty to retreat if the provisions applied.

Further, the trial court's instructions to the jury immediately after the retreat provision here at issue clarified:

> Therefore, if you find, that the defendant had a right to be present at the location where the force was used; did not provoke the person against whom the force was used and was not engaged in criminal activity, then the defendant had no duty to retreat.
>
> However, if you find, that the defendant did not have a right to be present at the location where the force was used; or did provoke the person against whom the force was used; or was engaged in criminal activity, then the defendant did have a duty to retreat; and you may consider whether the defendant's failure to retreat made his conduct under the circumstances as viewed from his stand point reasonable.

These provisions made it clear petitioner had "no duty to retreat" if and when the specified conditions were met, but had a "duty to retreat" when those conditions were not met.  Petitioner has not demonstrated that even if counsel had made the "statutory tracking" objection, the objection had been sustained and the provision on retreat modified to read precisely as the statute is worded, that there is a reasonable probability that the result of the proceeding would have been different.  Petitioner has not shown he was prejudiced by trial counsels' failure to make the specific "statutory tracking" objection.  Thus, petitioner has not demonstrated he was denied effective assistance of counsel with regard to this claim.

Moreover, petitioner has not demonstrated the state habeas courts' determinations that

---

[9]Prior to 2007, the Texas self-defense statute provided that in order to establish a valid claim of self-defense, the defendant had to establish not only that the victim used deadly force against him, but also that "a reasonable person in the [defendant's] situation would not have retreated" prior to using deadly force in response.  Tex. Penal Code Ann. § 9.32(a)(2) (West 2006).  This provision was deleted from the statute in 2007 and, in its place, the Texas Legislature enacted the above quoted sections 9.32(c) and (d) to the Penal Code, providing that a person does not have a duty to retreat if certain circumstances are met.

petitioner was not denied effective assistance of counsel with regard to this issue and under these circumstances was an unreasonable application of *Strickland*.  A fair-minded jurist, given the evidence of petitioner's guilt, could have reasonably concluded petitioner was not prejudiced by any deficiency in counsel's performance in this regard or by the inclusion of the challenged language in the charge.   Nor has petitioner shown the state habeas court's determination of this ineffective assistance claim was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  *See* 28 U.S.C. § 2254(d).   Petitioner's claim of ineffective assistance of counsel under Ground One is without merit and should be denied.

Petitioner's first and second grounds claim various error and resultant ineffective assistance of counsel with regard to the requirement or non-requirement to retreat when asserting a person is justified in using force or deadly force against another.   Whether there is or is not a duty to retreat, and whether the actor does or does not retreat, is simply a fact the jury may or may not consider (depending upon whether the various conditions are met) in determining the reasonableness of the actor's belief that force or deadly force was immediately necessary to protect the actor against the other's use or attempted use of unlawful force or deadly force.   The principal question, first and foremost, before this jury was whether petitioner was acting in self-defense when he used force or deadly force against the victims.   In assessing 99-and 40-year sentences, the jury clearly rejected petitioner's self-serving assertion, unsupported by any other evidence and, in fact, contradicted by all of the other testimony, that his killing of the victim and/or shooting a firearm toward the other vehicle was in self-defense.   The issue of retreat had no bearing on the verdict because the jury, in all likelihood, did not reach the issue of the reasonableness of petitioner's actions.   Therefore, any claims petitioner asserts herein with regard to the issue of retreat, even if supported, in all probability, would not have affected the jury's verdict because the jury clearly rejected petitioner's

claim of self-defense or any other justification of petitioner's conduct excluding his criminal responsibility.   Even so, the undersigned addresses petitioner's second claim below.

### 2.   Misadvice Affecting Decision to Reject Plea Offer

On February 22, 2010, the State offered petitioner plea bargains of thirty (30) years for the murder charge, and fifteen (15) years for the aggravated assault charge in exchange for his guilty plea in each case.[10]   [ECF 15-17 at 57-58; 15-22 at 49-50].   Petitioner avers he rejected the State's offers "and opted to take his chances at trial because he believed he was justified in using deadly force in terms of self defense."   [ECF 4 at 8].   Petitioner acknowledges it was his decision to reject the State's proposed offers, but argues his decision was based upon incorrect legal advice he received from defense counsel.   Consequently, by his second ground, petitioner argues he was denied effective assistance of counsel during the pre-trial plea negotiations.

Petitioner contends trial counsel's representation was deficient because he erroneously told petitioner "it didn't make any difference if he retreated" because "the duty to retreat did not make a difference in determining whether petitioner was justified in using deadly force."[11]   [ECF 4 at 8-9].   Petitioner maintains that if he had been advised as to the correct state of the law, *i.e.*, that if certain conditions were not present, then a jury could consider his failure to retreat in determining the reasonableness of his belief that the use of deadly force was immediately necessary, he then "would have accepted the State's plea bargain offer" instead of proceeding to trial.   [ECF 4 at 9].   Petitioner thus argues he was prejudiced by defense counsel's deficient performance because but for counsel's incorrect legal advice regarding the relevance of retreat and its possible bearing on

---

[10]The offer included that petitioner would be assessed a $5,000 fine for the murder charge and a $2,500 fine for the aggravated assault with a deadly weapon charge.

[11]Petitioner does not allege defense counsel advised him to reject the plea offer or advised petitioner could not be convicted at trial if he asserted self-defense and deadly force in defense of person.

whether petitioner was justified in using deadly force in self-defense, he would have accepted the State's plea offers and received lesser sentences of 30- and 15-years.

Petitioner raised this ground in his applications for state habeas relief. During the state habeas proceedings, petitioner filed his own affidavit as well as affidavits from his then wife, his mother, and his father, stating defense counsel advised he thought that petitioner was justified in using deadly force in self-defense, that petitioner had a "'viable defense' in taking [his] case before a jury," and that whether petitioner retreated or not was irrelevant to whether he was justified in using deadly force in self-defense. [ECF 15-17 at 51-56; 15-22 at 43-48]. The affiants further attested that if defense counsel had properly advised that the law "required" petitioner to retreat before using deadly force, petitioner would have accepted the State's plea offers of 30- and 15-year sentences. In response to petitioner's claims and tendered affidavits, defense counsel submitted his own affidavit stating:

> I fully advised [petitioner] on all possible outcomes of a trial. I advised him of the entire range of punishment and all possible defenses. I also explained the risks associated with taking a case to trial. I never guaranteed any result to [petitioner]. I presented [petitioner] with all plea bargain offers from the state and thoroughly explained them to him. It was [petitioner's] decision to have his cases tried to a jury."

[ECF 15-17 at 27]. The state habeas trial court did not enter findings of fact or conclusions of law on petitioner's state habeas applications. The TCCA denied petitioner's habeas applications without written orders, thereby finding petitioner's ineffective assistance of counsel claim on this basis was without merit.

"If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler v. Cooper*, 566 U.S. 156, 168 (2012). Here, in the four (4) affidavits submitted by petitioner in the state habeas proceedings, the affiants all attested defense counsel was of the opinion petitioner was justified in using deadly force in self-

defense and that his failure to retreat was irrelevant in making that determination (and presumably advised petitioner and the affiants of his position). In his responsive affidavit, defense counsel did not specifically address petitioner's allegation of misadvice concerning the law on retreat and the use of deadly force. Instead, defense counsel globally asserted he explained all plea offers and (properly) advised petitioner on all possible defenses, the range of punishment, the risks associated with taking a case to trial, and all possible outcomes of a trial, without ever guaranteeing any result to petitioner. Petitioner, however, points to a statement defense counsel made during closing argument at the guilt-innocence phase of trial as conclusive evidence that counsel misadvised petitioner as to the law on the use of deadly force and the duty to retreat during pre-trial plea negotiations. During closing counsel stated:

> The point is with this whole thing, when it comes to murder and deadly force and reasonable belief – [w]hen it talks about [petitioner's] reasonable belief their life was in danger, the self-defense issue kicks in, but they have the duty to retreat if three things crop up; they shouldn't have been there, they provoked it, they were engaged in criminal activity at the time it was done. But in this situation I don't care if you believe any of those things apply. . . . [Because] I don't think it makes any difference because a bullet will chase you wherever you go, and it doesn't take much to turn a barrel. So the big question comes down to this is, you've got one man that tells you he fired a gun at that car so they wouldn't shoot him. . . . But you still have a right to defend yourself if you reasonably believe that you might be killed yourself. [ECF 14-19 at 76-77].

The undersigned does not interpret counsel's argument as a misstatement of the law, *i.e.*, that the failure to retreat is irrelevant in determining whether a person was justified in using deadly force in self-defense. Rather, the undersigned interprets counsel's statement simply to be that even if the jury found petitioner was under a duty to retreat by finding certain conditions were present, that his belief that deadly force was immediately necessary was still reasonable, despite his failure to retreat, because even if he had attempted to retreat, he still could have easily been shot and he reasonably believed he would be shot or killed if he did not fire his gun. This

statement is not evidence, much less conclusive evidence, that counsel misadvised petitioner or the affiants as to the law during pre-trial plea negotiations. However, there are four (4) unrebutted, albeit self-serving, affidavits before the Court that defense counsel did, in fact, misadvise petitioner on the state of the law with regard to retreat, in using deadly force in self-defense and, possibly, as to the likelihood of success in asserting such a justification for petitioner's actions. Although the undersigned is of the opinion petitioner has not proven counsel's advice with respect to the use of deadly force in defense of person was so seriously misleading or incorrect that he was not functioning as the counsel guaranteed petitioner by the Sixth Amendment or that such representation fell below an objective standard of reasonableness, the undersigned will find, solely for purposes of this discussion, that counsel's pre-trial representation of petitioner was deficient.

Even assuming defense counsel was deficient in his representation of petitioner during the plea negotiation process by incorrectly advising petitioner when and if retreat is relevant in determining when a person is justified in using deadly force against another, petitioner has failed to show he was prejudiced by any such deficiency. To show prejudice from ineffective assistance of counsel where a plea offer has been rejected because of counsel's deficient performance, petitioner must demonstrate a reasonable probability:

1.    he would have accepted the earlier plea offer had he been afforded effective assistance of counsel;

2.    the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law; and

3.    that the end result of the criminal process would have been more favorable by reason of a plea to a sentence of less prison time.

*See Missouri v. Frye*, 566 U.S. 134, 147-49 (2012).

Here, petitioner and the other affiants on his behalf, all attested petitioner would have accepted the State's offer of 30- and 15-year sentences and pleaded guilty had defense counsel properly advised that the law "required" petitioner to retreat before using deadly force.   Again, the law is not so "black and white;" it does not simply require one to retreat before using deadly force, and does not mandate a conviction if one does not retreat before using deadly force.   Only if none of the deadly force justifications apply and a person is thus not justified in using deadly force, is that person required to retreat.   *See Hill v. State*, 2010 WL 2540603 *4 (Tex.App.--Austin June 25, 2010, no pet.).   Moreover, the failure to retreat is then only considered in determining the reasonableness of the person's belief that the use of deadly force was immediately necessary.   If petitioner had been advised of this precise state of the law, it is questionable whether he would have accepted the State's 30-year plea offer for his guilty plea on this basis alone.

Moreover, by his sworn testimony, petitioner insisted he did not place the gun in the console for easy access or pursue the victims to exact revenge for his brother.   Petitioner further insisted he had a legitimate right to be present at the location where he used deadly force. Petitioner maintained he did not provoke the victim, did not swerve his car toward the victims' car, and was not otherwise engaging in criminal activity at the time he used deadly force. Petitioner insisted that although he fired shots directly toward the victims' car at close range, he did not intend or attempt to shoot anyone in the other car [ECF 14-19 at 61], but that he did reasonably believe deadly force was immediately necessary to protect himself against the victims' use or attempted use of unlawful deadly force.   Petitioner insisted that every other witness, all of whom testified in direct conflict with petitioner's testimony, including certain passengers in his car, were lying.   Petitioner also testified he did not have time to stop the car to end the encounter, and that even if he had stopped the car, the individuals in the other car still would have shot

petitioner.   Petitioner further testified he had never told anyone he believed he was defending himself by shooting at the other car until he took the stand at trial and testified as such.   [ECF 14-19 at 66].

Based on petitioner's insistence at trial of no wrong doing on his part and that he was justified in using deadly force against the victim, petitioner's assertion that he would have accepted the State's offer and entered guilty pleas to murder and aggravated assault is questionable and even highly suspect.   Based on petitioner's testimony, the Court questions the credibility of petitioner's self-serving, after-the-fact affidavits that he would have pled guilty to murder and aggravated assault "3g" offenses, and accepted 30- and 15-year sentences without a chance to appeal instead of proceeding to trial to challenge the charges.

Lastly, the Court notes petitioner does not request as relief in this proceeding that the State be ordered to reoffer the plea agreement, or that he be resentenced to 30- and 15-year sentences as if he had accepted the proposed plea offer and pleaded guilty.   Instead, petitioner asserts his conviction should be overturned and his case remanded to the state trial court for a new trial.   A request that he be returned to the position he was in but for counsel's deficient advice would more effectively support his assertion that he would have accepted the State's plea offer if counsel had advised his failure to retreat could be considered by the jury in determining the reasonableness of his beliefs and actions.

The undersigned finds petitioner has not shown a reasonable probability that he would have accepted the State's 30-year plea offer for murder had counsel advised that the circumstances in which it is statutorily permissible to defend oneself with deadly force were not present here, that petitioner thus had a duty to retreat, and that his failure to retreat could be considered by the jury in determining whether he reasonably believed deadly force was immediately necessary to protect

himself against the victim's use of unlawful deadly force.

Petitioner must also demonstrate a reasonable probability that his guilty plea and the recommended sentences would have been entered without the prosecution canceling it or the trial court accepting it.   As noted in *Frye*, 566 U.S. at 148-49, this showing is of particular importance because a defendant has no right to be offered a plea, *see Weatherford v. Bursey*, 429 U.S. 545, 561 (1977), nor a federal right that the judge accept it.   *Santobello v. New York*, 404 U.S. 257, 262 (1971).   Although citing *Lafler v. Cooper*, 566 U.S. 156 (2012) in both his memorandum and his reply, petitioner does not reference or address his requirement to make this showing. Moreover, the record is silent as to this issue and reflects no indication as to whether the State would have proceeded with their plea offers in this "particularly egregious" case or whether the state trial court would have accepted a 30- and 15-year sentences in exchange for petitioner's guilty pleas.   Petitioner has not demonstrated a reasonable probability that his guilty pleas and the recommended sentences would have been entered.[12]

Petitioner has not demonstrated that absent counsel's constitutionally deficient advice, he would have accepted the State's offer to plead guilty to the offenses of murder and aggravated assault and receive 30- and 15-year unappealable sentences rather than going to trial to contest the charges.   Nor has petitioner demonstrated any guilty pleas and the recommended sentences would have been entered.   Petitioner has not demonstrated he was prejudiced by any misadvice from defense counsel during the pre-trial plea process.

Again, this Court is delegated the duty of determining whether the state habeas courts reasonably concluded counsel was not deficient or that petitioner was not prejudiced by any

---

[12]Petitioner must also show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a sentence of less prison time.   As petitioner received 99- and 40-year sentences for his conduct, this showing can be made.

deficiency on counsel's part.  In that regard, petitioner contends the "[s]tate habeas fact finding that petitioner's trial attorney did not give him false advice is unreasonable."  Petitioner argues there is "clear and convincing evidence that the State court's fact finding is completely wrong on this issue," citing counsel's closing argument and petitioner's submitted affidavits as evidence that counsel firmly believed retreat was a non-issue in whether petitioner was justified in using deadly force in self-defense and so advised petitioner.  [ECF 4 at 9].  Petitioner contends he has presented "overwhelming evidence" that "the State court was clearly unreasonable" in finding counsel gave petitioner "correct advice on the issue."  [ECF 4 at 9-10].

This Court is unable to determine if the state habeas courts denied petitioner's claim on the deficiency prong or on the prejudice prong of the *Strickland* test, or both.  It is clear, however, that the state courts' resolution of petitioner's claim did not require the courts make a factual finding as to the precise advice given by defense counsel to petitioner concerning retreat, or his advice as to whether petitioner was justified in using deadly force in self-defense.  Petitioner's family member affidavits, and his own, do not conclusively establish the state courts' decision to deny relief on this ineffective assistance of counsel claim was based on an unreasonable determination of the facts, or was contrary to or involved an unreasonable application of *Strickland*.  Petitioner has not made the necessary showing to meet the AEDPA standard for granting federal habeas relief.  *See* 28 U.S.C. § 2254(d).  Petitioner's claim of ineffective assistance of counsel under Ground Two is without merit and should be denied.

### 3.   Failure to Request Instruction on "Necessity" in the Jury Charge

As noted previously, during closing argument defense counsel stated:

What would have happened if [petitioner] had slammed on the brake?  The gun still could have gone off.  Sped up?  The gun could have still gone off.  Because guns are used by line of sight and it's not because of your sight.  It's whatever they

are aimed at.   And it doesn't take much to turn a gun.

* * *

The point is with this whole thing, when it comes to murder and deadly force and reasonable belief – [w]hen it talks about [petitioner's] reasonable belief their life was in danger, the self-defense issue kicks in, but they have the duty to retreat if three things crop up; they shouldn't have been there, they provoked it, they were engaged in criminal activity at the time it was done.   But in this situation I don't care if you believe any of those things apply. . . . [Because] I don't think it makes any difference because a bullet will chase you wherever you go, and it doesn't take much to turn a barrel.   So the big question comes down to this is, you've got one man that tells you he fired a gun at that car so they wouldn't shoot him.

[ECF 14-19 at 76-77].

By his third ground, petitioner argues defense counsel was deficient for failing to request the trial court include an instruction on the justification defense of "necessity" in the jury charge.[13] Petitioner argues "[i]t was objectively unreasonable not to request the necessity instruction because it was the only defensive instruction that conformed with trial counsel's [above-quoted closing] argument . . . that a person's duty to retreat makes no difference."   Petitioner maintains that "if the given jury charge on self defense was correct . . . the only way petitioner could have been acquitted according to his counsel's closing argument was to have found him justified by a necessity defense."   [ECF 4 at 11].   Petitioner appears to argue he was prejudiced by petitioner's failure to request a jury instruction on necessity because "[t]he trial court would have been required to give this instruction if requested by trial counsel" and, based on petitioner's testimony "that he was in imminent fear for his life when someone pointed a gun at him, along with the evidence . . . that a toy BB gun . . . was in fact discovered in the backseat of the vehicle where the victim was

---

[13]Section 9.22 of the Texas Penal Code, addressing Necessity as a justification excluding criminal responsibility, provided, at the time of petitioner's charged offense:

Conduct is justified if:
(1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;
(2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and
(3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

seated clearly shows that a jury would have found the possibility of this defense viable."    [ECF 4 at 10, 11-12].

Petitioner raised this ground in his applications for state habeas relief.   In his affidavit submitted during state habeas proceedings, defense counsel stated:

> I did not request a necessity instruction in the Jury Charge because after carefully reviewing the facts of the case and consulting co-counsel I did not see a legal basis for a necessity instruction in the Jury Charge.

[ECF 15-17 at 27].   The state habeas trial court did not enter findings of fact or conclusions of law on petitioner's state habeas applications.   The TCCA denied petitioner's habeas applications without written orders, determinations on the merits of petitioner's claim.

The defense of necessity allows for "the situation where physical forces beyond the actor's control rendered illegal conduct the lesser of two evils."   *United States v. Bailey*, 444 U.S. 394, 410 (1980).   The defense is designed to spare a person from punishment if he "reasonably believed that criminal action was necessary to avoid a harm more serious than that sought to be prevented by the statute defining the offense."   *Id.*   However, if there was a "reasonable, legal alternative to violating the law, 'a chance both to refuse to do the criminal act and also to avoid the threatened harm,' the defense will fail.   *Id.*   (citations omitted).

Here, petitioner appears to argue he was forced to violate the law, *i.e.*, shoot three (3) rounds from a firearm at an occupied vehicle in close proximity to prevent the greater harm of a firearm he testified he viewed in the vehicle from possibly being fired toward his vehicle.   Even assuming as true petitioner's testimony that he observed a firearm inside the vehicle with which he was driving parallel at night, there were multiple reasonable and legal alternatives available to petitioner rather than reaching into the console of the car, obtaining a firearm and raising it to fire multiple rounds into the other vehicle.   Because petitioner had legal alternatives to breaking the

law, his conduct was not justified by the doctrine of necessity.

Petitioner has not demonstrated that if such a request had been made, the trial court would have included an instruction on "necessity" in the jury charge.   When the use of deadly force in self-defense is the conduct that is allegedly "immediately necessary" under the necessity defense, the defense of necessity does not apply, and any entitlement to a jury instruction is determined by section 9.32 (self-defense) or section 9.33 (defense of a third person).  *See Whipple v. State*, 281 S.W.3d 482, 503 (Tex. App.–El Paso 2008, pet. ref'd).   Moreover, counsel's arguments during closing, even if construed as an argument for a necessity defense, did not constitute evidence and would not have warranted an instruction on necessity.   As the evidence did not raise the defensive issue of necessity and, even if it had, the defense of necessity would not have been applicable under Texas law, counsel cannot be faulted for not requesting a jury instruction on necessity, *i.e.*, for performing a meritless and fruitless act.

Petitioner has not shown counsel was deficient for failing to request the trial court include an instruction on necessity in the jury charge.   Nor has petitioner shown he was prejudiced by trial counsel's failure to request a defensive instruction for necessity.   Namely, petitioner has not demonstrated it is reasonably likely that the outcome of the case would have been different if defense counsel had requested an instruction on necessity.   Not only is it unlikely the trial court would have granted such a request, but it is also not reasonably likely the jury would have given any merit to such an instruction based on the totality of the evidence presented at trial and the jury's complete rejection of petitioner's self-defense justification, as evidenced by the jury sentencing petitioner to 99 years.

Moreover, petitioner has not demonstrated the state habeas courts' determination that

petitioner was not denied effective assistance of counsel with regard to this issue was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  *See* 28 U.S.C. § 2254(d).  Petitioner's claim of ineffective assistance of counsel under Ground Three is without merit and should be denied.

### 4.  Failure to Request Instruction on "Reasonable Doubt" as to Self-Defense

At the time of petitioner's offense and at the time of his trial, section 2.03(d) of the Texas Penal Code provided:

> If the issue of the existence of a defense is submitted to the jury, the court shall charge that a reasonable doubt on the issue requires that the defendant be acquitted.

At the conclusion of the guilt-innocence phase of petitioner's trial, the trial court submitted the issue of whether petitioner acted in self-defense and was justified in using deadly force to the jury. In its charge to the jury, the trial court instructed, as relevant:

> Our law provides that it is a defense to the offense of Murder if the defendant reasonably acted in self-defense.   The State is not required to negate the existence of a defense.[14]

> * * *

> Now if you find from the evidence, beyond a reasonable doubt that on or about the 31st day of May, 2009, in Potter County, Texas, the defendant, DAVID ABRAN ANAYA, did then and there knowingly or intentionally cause the death of an individual, namely, Eric Mireles, by shooting him with a firearm then you will find the defendant guilty.   Unless you so find from the evidence beyond a reasonable doubt thereof, you will acquit the defendant and say by your verdict "Not Guilty."

> Or *if you find from the evidence beyond a reasonable doubt* that on or about the 31st day of May, 2009, in Potter County, Texas, the defendant, David Abran Anaya, did then and there cause the death of an individual, namely Eric Mireles, by

---

[14]Again, the charge in the aggravated assault case added the language, "however, the State must prove each and every element of the offense beyond a reasonable doubt."   [ECF 15-5 at 96].

shooting him with a firearm, but you further find from the evidence ***that the Defendant reasonably believed as viewed from his standpoint alone, that deadly force when and to the degree used, if it was, was immediately necessary to protect himself against the use or attempted use of unlawful deadly force by Eric Mireles or another individual, you will acquit the defendant of the offense of murder.***

* * *

The burden of proof in all criminal cases rests upon the State throughout the trial and never shifts to the defendant.

All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. . . .  The law does not require a defendant to prove his innocence or produce any evidence at all.  The presumption of innocence alone is sufficient to acquit the defendant unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case.

The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and, if it fails to do so, you must acquit the defendant.

* * *

In the event you have a reasonable doubt as to the defendant's guilt after considering all the evidence before you, and these instructions, you will acquit him and say by your verdict "Not Guilty."

[ECF 14-16 at 109-12] (emphasis added).  As seen above, the trial court did not specifically instruct the jury that if there was "a reasonable doubt" on the self-defense or use of deadly force issues, that petitioner was to "be acquitted."   Instead, the trial court instructed the jury that if it found "beyond a reasonable doubt" that petitioner met the self-defense and use of deadly force provisions, that it must acquit petitioner.

Petitioner contends the trial court failed to instruct the jury, "specifically in the paragraph applying the law of self defense, to acquit should there be reasonable doubt with respect to any defense."  [ECF 4 at 15].   Citing section 2.03(d), petitioner states it is "clear and without ambiguity that a defendant is entitled to a reasonable doubt instruction . . . on self defense."  [ECF 4 at 14].   Petitioner argues the jury charge references to reasonable doubt "in proving the elements

of a crime or in general to a person's guilt/innocence was insufficient" to ensure the jury knew it had "a duty to acquit [petitioner] if there [was] a reasonable doubt as to . . . self defense."   [*Id.*]. Petitioner contends the jury charge in the self-defense application section "should have stated if a reasonable doubt existed on the issue of self defense the jury should give the defendant the benefit of the doubt and acquit."   [*Id.*]

By his fourth ground, petitioner argues counsel was deficient because he failed to request the trial court instruct the jury that "if they had a reasonable doubt as to if petitioner acted in self defense" they should acquit petitioner.   [ECF 3 at 7].   Petitioner contends he was prejudiced by defense counsel's failure to request such an instruction because such a request would have been granted, and the charge would have included the reasonable doubt instruction in the self-defense paragraphs.   Petitioner appears to argue that the "conspicuous absence" of an explicit reasonable doubt instruction in the self-defense paragraphs may have caused the jury to infer that the reasonable doubt standard requiring acquittal was not applicable to the self-defense issue. Petitioner maintains counsel's deficiency "deprived petitioner of the fundamental right to have his self defense claim decided fairly by an impartial jury."   [ECF 4 at 16].   Petitioner concludes there is a reasonable probability that but for defense counsel's deficiency, the outcome of his trial would have been different.

Petitioner did not raise this claim until his 5th and 6th state habeas applications, which were dismissed by the state court as abusive/successive; therefore, this claim is unexhausted and procedurally barred from consideration by this Court.   Petitioner asserts this Court should, nonetheless, hear his claim under *Martinez v. Ryan*, 566 U.S. 1 (2012) and *Trevino v. Thaler*, 569 U.S. 413 (2013).   In *Trevino*, the United States Supreme Court held that the Texas procedural bar on successive or subsequent state habeas applications "will not bar a federal habeas court from

hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Trevino*, 569 U.S. at 429 (*quoting Martinez v. Ryan*, 566 U.S. at 17).   Here, petitioner proceeded *pro se* in his state collateral habeas proceedings and was not represented by counsel.

Considering petitioner's unexhausted claim of ineffective assistance of trial counsel, the Court finds it should be denied for lack of merit.   The Court acknowledges there is a reasonable probability that if trial counsel had requested the trial court include the precise instruction mandated by section 2.03(d) in the jury charge, that the trial court would have granted counsel's request and included such an instruction in the jury charge.   Therefore, for purposes of this discussion, the Court will presume petitioner has shown counsel was deficient for failing to request the precise instruction.

Petitioner has not shown, however, that he was prejudiced by trial counsel's failure to request the additional instruction.   The trial court's charge, although not precisely stating the jury must acquit petitioner if it had "reasonable doubt" on his self-defense theory or whether he was justified in using deadly force, did state the jury must acquit petitioner if it found "beyond a reasonable doubt" that petitioner met the self-defense and use of deadly force provisions.   As noted by respondent, a fair reading of the entire charge made it clear reasonable doubt related to self-defense as well as all other issues.   Moreover, in its closing statement, the State acknowledged it had the burden of proof in the case and specifically had to disprove petitioner's claim of self-defense.   When considered with the overwhelming evidence of petitioner's guilt, petitioner cannot show any deficiency on the part of defense counsel in failing to request this specific instruction prejudiced him, *i.e.*, the Court finds no reasonable probability that the jury would have found petitioner acted in self-defense or was justified in using deadly force and would

have acquitted petitioner.

Moreover, petitioner has not demonstrated the state habeas courts' determination that petitioner was not denied effective assistance of counsel with regard to this issue was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *See* 28 U.S.C. § 2254(d). Petitioner's claim of ineffective assistance of counsel under Ground Four is without merit and should be denied.

## VI.
## RECOMMENDATION

For the above reasons, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the petition for a writ of habeas corpus filed by petitioner DAVID ABRAM ANAYA be DENIED.

## VII.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusion and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED August 3, 2018.

LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation.   In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.   Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).   **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation."   Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.   A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court.   *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).

HAB54\FCR\ANAYA-234.IAC-CHARGE:2